**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION**

IN RE:

THEODORE MASON                                                                                        CASE NO. 14-60159

DEBTOR


**MEMORANDUM OPINION AND ORDER
GRANTING RELIEF FROM STAY**

This matter is before the Bankruptcy Court on the Creditors' Andrea Lee and Richard Perry's Motion for Relief from Stay [Doc. 58] and Memorandum in Support [Doc. 75] and the Debtors' Objection [Doc. 71]. Lee and Perry seek relief from stay to continue to prosecute a pre-petition lawsuit filed against the Debtor in federal district court. The Debtor opposes such relief, arguing that the matter is better litigated in the Bankruptcy Court in the context of the Debtor's Objections to Claim [Docs. 69 and 70] and/or the adversary proceedings recently filed by Lee and Perry objecting to the dischargeability of the alleged claims [Docs. 67 and 68]. The Bankruptcy Court held a hearing on July 23, 2014, and took the matter under submission. It is now ripe for determination.

**Facts**

The Debtor filed for chapter 13 relief on February 13, 2014. He listed no real property and only $26,200.00 in personal property, much of which the Debtor exempts. The Debtor further scheduled only 3 creditors: (1) Andrea Lee; (2) Richard Perry; and (3) Jay Milby Ridings. Schedule F shows that Lee and Perry have contingent, disputed, and unliquidated claims based on a lawsuit pending in federal district court. The only other debt scheduled is an unsecured

1

nonpriority claim of Jay Milby Ridings for $5,000.00 representing attorneys fees incurred in defending the lawsuit prior to filing bankruptcy.

Perry filed a proof of claim for $348,000.00 based on compensatory and punitive damages, and accruing attorneys' fees, sought as part of the "employment lawsuit." *See* POC #1-1. Lee filed a proof of claim for $391,552.62 based on compensatory and punitive damages, and accruing attorneys' fees, as part of her claim in a similar "employment lawsuit." *See* POC #2-1. The deadline for filing a proof of claim expired on June 18, 2014. Jay Milby Ridings did not file a proof of claim nor did any other potential creditor, so Lee and Perry's claims are the only claims that will be administered in the Debtor's bankruptcy.

The Debtor initially proposed a chapter 13 plan offering to pay $200.00 per month for a period of 60 months [Doc. 8]. The Debtor amended the plan several times and now proposes a monthly payment of $300.00 per month starting in August of 2014 [Doc. 81]. Lee and Perry object to confirmation, arguing the chapter 13 bankruptcy and plan are not filed in good faith [Docs. 14 & 15]. The Chapter 13 Trustee does not recommend confirmation based on the pending objections, as well as a need for amendments to the schedules and statement of financial affairs, and an inability to project the distribution to unsecured creditors [Doc. 88]. The Chapter 13 Trustee recently employed counsel to investigate whether certain unscheduled assets may be recovered for the bankruptcy estate [Doc. 89].

At issue is Lee and Perry's motion for stay relief to proceed with their employment lawsuits. On July 16, 2013, Lee filed a lawsuit against the Debtor, his now defunct company Mason Security Network, Inc. ("Mason Security"), and James Brimm, a prior employee of Mason Security, to redress injuries she allegedly suffered as a result of the Defendants' discriminatory and retaliatory actions while she was employed by Mason Security pursuant to

2

(1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2 *et seq.*; (2) the Americans with Disability Act of 1990, 42 U.S.C. §§ 12101 *et seq.*; (3) the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*; (4) the Kentucky Civil Rights Act, K.R.S. § 344.450 *et seq.*; and (5) the common law of Kentucky. On August 20, 2013, Perry filed a lawsuit against the Debtor and Mason Security to redress injuries he allegedly suffered as a result of the Defendants' retaliatory actions against him for aiding Perry pursuant to (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2 *et seq.*; (2) the Kentucky Civil Rights Act, K.R.S. § 344.450 *et seq.;* and (3) the common law of Kentucky.

Lee alleges she was subjected to repeated sexual harassment and gender discrimination by Brimm during her employment from July 2010 until her termination on or around September 4, 2012. Despite her complaints, the Debtor and Mason Security allegedly took no action to remedy the situation and ultimately terminated her employment in retaliation for filing a complaint with the Equal Employment Opportunity Commission ("EEOC"). Lee further claims the Debtor and Mason Security terminated her employment because of a perceived disability from a cancer diagnosis. Lee seeks lost wages and benefits, emotional distress damages, and punitive damages. Perry asserts that he was wrongfully terminated in retaliation for providing a written statement in support of Lee's allegation of harassment and discrimination.

Lee and Perry argue that there is sufficient "cause" pursuant to 11 U.S.C. § 362(d)(1) to grant relief from stay, primarily because the claims are "personal injury tort" claims within the meaning of 28 U.S.C. § 157(b)(5). Lee and Perry also argue that "cause" exists because: (1) third party non-debtor defendants are named in the lawsuits; (2) no preliminary bankruptcy issues need to be determined; (3) the litigation in the district court has already advanced to a discovery stage and a trial date has been set; (4) movants are seeking a jury trial; and (5) a

district court has more expertise in these types of claims. The Debtor objects on the grounds that no bodily injury is alleged and thus the claims are not "personal injury tort" claims. The Debtor also argues that the factors weigh against stay relief, particularly now that Lee and Perry have filed adversary proceedings to determine dischargeability based on the same facts.[1]

### Discussion

**I.    Stay Relief to Proceed with Pending Litigation is Appropriate for "Cause."**

Section 362(d)(1) permits the Bankruptcy Court to terminate, annul, modify, or condition the stay on a request of a party in interest for "cause." 11 U.S.C. § 362(d)(1). The party requesting stay relief has the initial burden of proof to make a *prima facie* showing that there is a factual and legal right to the relief sought. Once the moving party makes this showing, the burden of going forward and the ultimate burden of persuasion shift to the party opposing the relief. 3 COLLIER ON BANKRUPTCY § 362.10 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014).

In the context of a request to continue a non-bankruptcy judicial action, courts balance a variety of non-exclusive factors to determine "cause": (1) judicial economy; (2) trial readiness; (3) the resolution of preliminary bankruptcy issues; (4) the creditor's chance of success on the merits; (5) the cost of the defense or other potential burden to the bankruptcy estate; and (6) the impact of litigation on other creditors. *In re United Imports, Inc.*, 203 B.R. 162, 166-167 (Bankr. D. Neb. 1996).

---

[1] Lee and Perry have requested a trial by jury and also specifically refused to consent to liquidation of the underlying claims in the Complaints filed in their respective adversary proceedings.

**II.      The Key Issue is whether the Creditors' Claims are "Personal Injury Tort" Claims.**

The primary issue is whether this is the type of claim that the United States District Court for the Eastern District of Kentucky has given the Bankruptcy Court authority to adjudicate. The District Court's subject matter jurisdiction over bankruptcy matters is based on 28 U.S.C. §1334. Section 1334 provides that "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). At a minimum, the District Court has subject matter jurisdiction if the matter is at least "related to" the bankruptcy. *See Michigan Empl't Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1141 (6th Cir. 1991). A matter is "related to" the bankruptcy if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy" except in situations where there is only "an extremely tenuous connection to the estate." *Id. at* 1141-42 (adopting the test as described in *Pacor, Inc. v. Higgins (In re Pacor, Inc.)*, 743 F.2d 984, 994 (3d Cir. 1984)). A determination of whether Lee and Perry have a claim against the Debtor and the amount of that claim affects the administration of the estate as these are the only claims requiring administration.

A district court may refer bankruptcy cases to a bankruptcy court pursuant to 28 U.S.C. §157. Section 157(a) provides: "Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." The Eastern District of Kentucky has referred such proceedings to the Bankruptcy Court through Local Rule 83.12. But the District Court has not referred tort claims involving personal injury to the Bankruptcy Court:

> **Generally**. The powers of law, equity and admiralty vested in the District Court are referred to the United States Bankruptcy Court as a unit of the

5

> District Court. The following cases and proceedings are referred to the Bankruptcy Court judges for the District:
>
> …
>
> (2) All matters arising under – or arising in or related to cases arising under – Title 11 of the United States Code that were pending in the Bankruptcy Court on July 9, 1984, *except proceedings involving tort claims for personal injury or wrongful death*;
>
> (3) All matters arising under – or arising in or related to cases arising under – Title 11 of the United States Code file on or after July 10, 1984, *except proceedings involving tort claims for personal injury or wrongful death.*
>
> (4) All actions for removal of claims under 28 U.S.C. § 1452(a) and (b) that relate to bankruptcy cases, *except proceedings involving tort claims for personal injury or wrongful death.*

LR 83.12(a) (emphasis supplied).

The decision to limit the Bankruptcy Court's assistance with personal injury and wrongful death claims is consistent with the reason the District Court utilizes the Bankruptcy Court – its bankruptcy expertise. Bankruptcy courts have unique knowledge that allows efficient exercise of the District Court's jurisdiction over bankruptcy matters. "By expanding the responsibilities of bankruptcy judges, the Supreme Court seemed to recognize the importance of their expertise in efficiently resolving bankruptcy proceedings." *McKinstry v. Genser,* No. 7:13-125-ART, Doc. 218 at 3 (E.D. Ky. June 17, 2014). The District Court recognizes that "…everyone is better off if the expert court, the bankruptcy court, manages the [bankruptcy] litigation." *Id.* at p. 6. Conversely, the system is more efficient if the Bankruptcy Court does not dabble in non-bankruptcy matters in which it does not have the requisite expertise.

Even if "personal injury tort" claims were referred to the Bankruptcy Court, the Bankruptcy Court's ability to adjudicate such claims is limited by 28 U.S.C. § 157. Section 157(b)(2)(B) excludes from the list of "core" matters the "liquidation or estimation of contingent

6

or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11." Section 157(b)(2)(O) also excludes "personal injury tort or wrongful death claims" from "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship." In addition, § 157(b)(5) provides that "the district court shall order that personal injury tort or wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in which the claim arose, as determined by the district court in which the bankruptcy case is pending."

Lee and Perry argue that their claims are "personal injury tort" claims within the meaning of § 157 and the Bankruptcy Court does not have the authority to liquidate or estimate their claims. Hence, essential to a determination of whether stay relief is appropriate is the question of whether these claims are "personal injury tort" claims that the Bankruptcy Court cannot liquidate or estimate in an objection to claim context or an adversary proceeding, both of which are raised by the parties.

### III. Lee and Perry's Civil Rights Claims are "Personal Injury Tort" Claims.

The term "personal injury tort" is not defined in either title 28 or title 11 and there is considerable disagreement among the courts on its definition. Some courts adopt a "narrow" definition and hold that a tort without trauma or bodily injury is not a "personal injury tort" claim. *See, e.g, In re Atron Inc. of Michigan*, 172 B.R. 541, 542-543 (Bankr. W.D. Mich. 1994). Other courts adopt a "broader" view that includes a claim arising from an invasion of personal rights as a "personal injury tort" claim. *See, e.g., Leathem v. von Volkmar (In re von Volkmar)*, 217 B.R. 561, 566-567 (Bankr. N.D. Ill. 1998). A third approach adopts the broader definition of "personal injury tort," but requires further scrutiny of the claim to determine whether it has

7

"earmarks of a financial, business, or property tort claim, or a contract claim." *See Stranz v. Ice Cream Liquidation, Inc. (In re Ice Cream Liquidation, Inc.)*, 281 B.R. 154, 161 (Bankr. D. Conn. 2002). The third interpretation, requiring a case-by-case analysis, is the better approach.

Similar to the claims alleged herein, the claims at issue in *Stranz* were sexual harassment claims brought by employees of the debtor's predecessor pursuant to 42 U.S.C. § 2000e and its state law counterpart. After a discussion of the various approaches to define a "personal injury tort" claim, the *Stranz* court concluded that the creditors' sexual harassment claims qualified as "personal injury tort" claims within the meaning of § 157. *Stranz*, 281 B.R. 162-163. The *Stranz* court refused to adopt a bright line approach, but recognized that determining what qualifies as a "personal injury tort" case within the meaning of § 157 requires a case-by-case analysis.

The *Stranz* court focused its inquiry on the gravamen of the creditors' complaint to determine whether the claims were truly economic in nature and concluded that allegations of intentional and reckless indifference and disregard in committing an unlawful employment practice is different from other workplace claims which might constitute financial, business, or property tort claims of which a bankruptcy court is familiar. The court explained:

> That the Sexual Harassment Successor Liability Claim arises in an employment context gives the court some pause because the employment relationship is a contractual (and, hence, economic) one. However, Plaintiffs Stranz and Kemp allege that "Dunkirk has intentionally and with reckless indifference and disregard committed an unlawful employment practice in violation of Section 703 of Title VII, 42 U.S.C. Sec. 2000e-2." (See Complaint, Counts I, III, V, XV, and XVIII). That allegation (if proved) qualifies Plaintiffs Stranz and Kemp (if they otherwise prevail) not only for equitable relief (*see* 42 U.S.C. § 2000e-5(g)) but for damages as well (*see* 42 U.S.C. § 1981a). That fact sufficiently distinguishes Plaintiffs Stranz's and Kemp's portion of the Sexual Harassment Successor Liability Claim from other workplace claims which might constitute financial,

8

>business or property tort claims (or even contract claims) rather than "personal injury tort claims."

*Id. at* 162-163.

That same distinguishing factor is found here, where the gravamen of Lee and Perry's complaint is the Defendants' intentional discrimination and retaliation. This is not just an allegation of breach of an employment contract or failure to pay overtime wages. It is a case that stems from alleged conduct that violates the rights of the movants.

Civil rights claims, especially in the context of employment, fall into a gray area that can make this analysis more difficult. As the court in *Stranz* recognized, a claim arising out of an employment relationship may be "contractual (and hence, economic)" but allegations of sexual harassment are anything but economic.[2] *Id*. Sexual harassment and gender discrimination are based on a violation of a person's personal right to equal protection. This is not the typical breach of contract or fraud claim of which bankruptcy courts are familiar and more akin to intentional tort claims. The Bankruptcy Court has familiarity and expertise with business related torts and statutory causes of action that relate to these contractual relationships, such as fraud and consumer liability statutes, but the District Court is better equipped to deal with violations of a person's rights protected by statutorily created causes of action.

Interpreting "personal injury tort" claims to include Lee and Perry's civil rights claims is also consistent with the United States Supreme Court's treatment of similar civil rights claims in *Wilson v. Garcia*, 471 U.S. 261 (1985). *See, e.g., Thomas v. Adams (In re Gary Brew Enterprises, Ltd.)*, 198 B.R. 616, 620 (Bankr. S.D. Cal. 1996). In *Wilson*, the United States

---

[2] One court has explained that personal injury tort victims "stand in a somewhat different relationship with the bankruptcy debtor because they did not voluntarily enter into dealings with the debtor (and accept the risk of loss) in the same sense as traditional bankruptcy claimants." *Adams v. Cumberland Farms, Inc.*, No. 95-1736, 1996 WL 228567, *3 (1st Cir. May 7, 1996). Harassment and discrimination is not part of a choice to accept employment or the balancing of the risk of loss in making that choice.

9

Supreme Court discussed the nature of civil rights actions brought pursuant to 42 U.S.C. § 1983 and treated such actions as tort actions:

> Among the potential analogies, Congress unquestionably would have considered the remedies established in the Civil Rights Act to be more analogous to tort claims for personal injury than, for example, to claims for damages to property or breach of contract.  The unifying theme of the Civil Rights Action of 1871 is reflected in the language of the Fourteenth Amendment that unequivocally recognizes the equal status of every "person" subject to the jurisdiction of any of the several states.  The Constitution's command is that all "*persons*" shall be accorded the full privileges of citizenship, no *person* shall be deprived of life, liberty, or property without due process of law or be denied the equal protection of the laws.  A violation of that command is an injury to the individual rights of the person.

*Wilson v. Garcia*, 471 U.S. 261, 276-278 (1985).  The Supreme Court has also treated § 1981 claims the same way.  *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 661-662 (1987).

Kentucky courts have likewise followed *Wilson* and treated federal constitutional claims brought pursuant to § 1983 in a wrongful termination context as personal injury actions subject to a one-year statutory limitations period. *See Board of Trustees of University of Kentucky v. Hayse*, 782 S.W.2d 609, 613 (Ky. 1989).  *See also Anderson v. Board of Educ. Of Fayette County*, 616 F. Supp. 2d 662, 667-668 (E.D. Ky. 2009) (holding the state's general or residual statute for personal injury actions was the most analogous statute of limitations for actions brought under § 1983 or provision of education statute prohibiting discrimination based on sex or blindness).

Lee and Perry's civil rights claims are not so different from the § 1983 claims at issue in *Wilson* and *Hayse*.  *See, e.g., Ford v. Jones*, 372 F. Supp. 1187, 1190 (E.D. Ky. 1974) ("Although a claim of this nature would perhaps have been more appropriately forwarded under 42 U.S.C. § 2000e-2, the enactment of the Civil Rights Act of 1964, 42 U.S.C. 2000a, *et seq*., did

not pre-empt the maintenance of sex discrimination actions under 42 U.S.C. §1983.").  Both statutes protect an individual's civil rights.  Just because a person's civil rights are allegedly violated in an employment context does not change the nature of the claim.

To interpret civil rights claims as "personal injury tort" claims is also consistent with the generally accepted definition of a "personal injury."  Black's Law Dictionary defines "personal injury" as not only "bodily injury" but also "any invasion of a personal right, including mental suffering and false imprisonment."  BLACK'S LAW DICTIONARY (9th. Ed. 2009).  The Restatement (Second) of Torts recognizes false imprisonment, defamation, and malicious prosecution as torts although they do not necessarily result in bodily injuries.  The Restatement also recognizes tort liability for violations of legislative provisions such as those alleged by the Creditors.  RESTATEMENT (SECOND) OF TORTS § 874A cmt. b. (1979) ("Examples of legislative provisions creating new tort rights are civil rights acts…").

Further, the Bankruptcy Court won't ignore the language used by the Bankruptcy Code discussing exemptions.  Congress specifically granted an exemption to a debtor's right to receive "payment" or "property traceable to" payment on account of "personal *bodily* injury" pursuant to 11 U.S.C. § 522(d)(11)(D).  Congress did not make the same distinction in 28 U.S.C. § 157.

Therefore, for all the reasons stated herein, the term "personal injury tort" as used in § 157(b) includes the civil rights claims brought by the Lee and Perry pursuant to Title VII of the Civil Rights Act of 1964, the Americans with Disability Act of 1990, and the Kentucky Civil Rights Act.  The District Court has not referred these claims to the Bankruptcy Court and thus the Bankruptcy Court does not have the authority to liquidate or estimate them in any context.

**IV.    "Cause" Exists to Grant Relief from Stay.**

There is sufficient "cause" to grant Lee and Perry's request for relief from stay. While the Bankruptcy Court may determine the dischargeability of these claims in the Creditors' adversary proceedings, the Bankruptcy Court does not have the authority to liquidate or estimate the Creditors' civil rights claims, which comprise the gravamen of the Creditors' complaints. 28 U.S.C. § 157(b)(2)(B), (I) and (O). The filing of a proof of claim does not change this result. *In re Gary Brew Enterprises, Inc.*, 198 B.R. at 620.

Further, non-debtor third parties are named in the lawsuit, discovery has commenced and the District Court has already set a date for a jury trial. There are no preliminary bankruptcy issues to be determined. There is no true impact on other creditors as Lee and Perry's claims make up 100% of the allowable claims. The potential burden to the bankruptcy estate is small. The Chapter 13 Trustee has not recommended confirmation for reasons independent of the federal lawsuit. Lee and Perry's objections to confirmation are primarily based on actions separate from the allegations in the suit as well. It is too early in the litigation to determine the chance of success, and the Bankruptcy Court offers no opinion on this issue, so this factor does not weigh for or against stay relief. While the cost of defense is burdensome to the Debtor, it is not enough to overcome the weight of the factors in favor of stay relief.

**Conclusion**

Based on the foregoing, it is ORDERED the Creditor's Motion for Relief from Stay [Doc. 58] is GRANTED.

___

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



Signed By:
*Gregory R. Schaaf*
**Bankruptcy Judge**
**Dated: Thursday, August 07, 2014**
(grs)